WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Richard Patrick Flynn, III,<br><br>          Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>          Defendant. | No. CV-22-01776-PHX-JJT<br><br>**ORDER** |

At issue is the denial of Plaintiff Richard Patrick Flynn, III's Applications for Disability Insurance Benefits and Supplemental Security Income by the Social Security Administration under the Social Security Act. Plaintiff filed a Complaint (Doc. 1) with this Court seeking judicial review of that denial. The Court now addresses Plaintiff's Opening Brief (Doc. 19, Pl. Br.), Defendant Social Security Administration Commissioner's Response Brief (Doc. 23, Def. Br.), and Plaintiff's Reply (Doc. 24, Reply). The Court has reviewed the briefs and Administrative Record (Doc. 16, R.) and now affirms the Administrative Law Judge's (ALJ) decision (R. at 14–27) as upheld by the Appeals Council (R. at 1–3).

**I.    BACKGROUND**

Plaintiff filed an Application for Disability Insurance Benefits on June 16, 2020, and an Application for Supplemental Security Income on June 17, 2020, for a period of disability beginning on October 1, 2019. (R. at 14.) His claims were denied initially on July 24, 2020, and upon reconsideration on September 23, 2020. (R. at 14.) On April 30,

2021, Plaintiff appeared telephonically before the ALJ for a hearing regarding his claim. (R. at 14.) On July 8, 2021, the ALJ denied Plaintiff's claim. (R. at 14–27.) On September 9, 2022, the Appeals Council denied Plaintiff's Request for Review of the ALJ's decision. (R. at 1–3.)

In the Decision, the ALJ found Plaintiff had the severe impairments of bipolar type I, anxiety, and post-traumatic stress disorder (PTSD). (R. at 19.) The ALJ evaluated the medical evidence and testimony and ultimately concluded that Plaintiff was not disabled. (R. at 27.) In so doing, the ALJ determined that Plaintiff did "not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1." (R. at 20.) The ALJ found that Plaintiff had the Residual Functional Capacity (RFC) to perform work at all exertional levels but with mental limitations. (R. at 25.) Based on the RFC formulation and the testimony of the Vocational Expert (VE) at the hearing, the ALJ found that Plaintiff could perform jobs that exist in significant numbers in the national economy such that Plaintiff was not under a disability as defined in the Social Security Act. (R. at 26–27.)

## II. LEGAL STANDARD

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, but less than a preponderance; it is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.*; *see also Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). To determine whether substantial evidence supports a decision, the Court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* Generally, "[w]here the evidence is susceptible to more than one rational interpretation,

1  one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas
2  v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

3        To determine whether a claimant is disabled for purposes of the Act, the ALJ
4  follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of
5  proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett*
6  *v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether
7  the claimant is presently engaging in substantial gainful activity. 20 C.F.R.
8  § 404.1520(a)(4)(i). If so, the claimant is not disabled, and the inquiry ends. *Id.* At step
9  two, the ALJ determines whether the claimant has a "severe" medically determinable
10 physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If not, the claimant is not
11 disabled, and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's
12 impairment or combination of impairments meets or medically equals an impairment listed
13 in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so,
14 the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four.
15 *Id.* At step four, the ALJ assesses the claimant's residual functional capacity and
16 determines whether the claimant is still capable of performing past relevant work.
17 20 C.F.R. § 404.1520(a)(4)(iv). If so, the claimant is not disabled, and the inquiry ends. *Id.*
18 If not, the ALJ proceeds to the fifth and final step, where she determines whether the
19 claimant can perform any other work in the national economy based on the claimant's RFC,
20 age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If so, the claimant is
21 not disabled. *Id.* If not, the claimant is disabled. *Id.*

22 **III. ANALYSIS**

23       Plaintiff raises the following arguments for the Court's consideration: (1) the ALJ's
24 reasons for discounting the opinions of Plaintiff's medical care providers were not
25 supported by substantial evidence in the record; and (2) the ALJ rejected Plaintiff's
26 testimony without clear and convincing reasons. (Pl. Br. at 1.) The Court now examines
27 these in turn.
28

### A.     Medical Opinions

Plaintiff first challenges the ALJ's assessment of the opinions of Michael Duerden, M.D., a psychiatry resident at the University of Arizona who treated Plaintiff for bipolar disorder and anxiety beginning in July 2020. (Pl. Br. at 12–19.)

The Ninth Circuit no longer accords special deference to a treating or examining physician. *Woods v. Kijakazi*, 32 F. 4th 785, 792 (9th Cir. 2022). In 2017, the Social Security Administration amended the regulations for evaluating medical evidence. *See* Revisions to Rules Regarding Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5844 (Jan. 18, 2017). The 2017 regulations provide that "[w]e will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion . . . . The most important factors we consider when we evaluate the persuasiveness of medical opinions . . . are supportability . . . and consistency." 20 C.F.R. § 404.1520c(a). Other factors, which an ALJ "may, but [is] not required to[ ] explain" when evaluating the persuasiveness of a medical opinion, are the medical source's "relationship with the claimant," "specialization," "familiarity with the other evidence in the claim," and "understanding of our disability program's policies and evidentiary requirements." *Id.* § 404.1520c(b)(2), (c).

Moreover, the Ninth Circuit held its requirement that ALJs provide "specific and legitimate reasons" for rejecting a treating or examining doctor's opinion is incompatible with the revised regulations. *Woods*, 32 F. 4th at 790. Nonetheless, in rejecting a treating or examining doctor's opinion as unsupported or inconsistent, an ALJ must provide an explanation—that is, reasons—supported by substantial evidence. *Id.* This means that the ALJ "must 'articulate . . . how persuasive' it finds 'all of the medical opinions' from each doctor or other source, and 'explain how it considered the supportability and consistency factors' in reaching these findings." *Id.* (citing 20 C.F.R. §§ 404.1520c(b), 404.1520(b)(2)).

Dr. Duerden noted Plaintiff's history of manic and depressive episodes as well as disturbance of mood, anhedonia, appetite and sleep disturbance, paranoia, psychomotor retardation, decreased energy, hyperactivity, and distractability. (R. at 650–51.) On account of Plaintiff's bipolar disorder and anxiety as well as PTSD arising from being robbed at

gunpoint while working at a convenience store, Dr. Duerden opined that Plaintiff would be moderately limited in his ability to adapt and his ability to understand, remember, and apply information, and markedly limited in his ability to interact with others and his ability to maintain concentration, persistence, or pace. (R. at 651.) Additionally, Dr. Duerden concluded Plaintiff would have marked limitations in short-term memory, including in remembering locations and work-like procedures. (R. at 652–53.) Dr. Duerden opined that Plaintiff would be able to maintain attention and concentration for less than 30 minutes at a time, would be off task greater than 25 percent of the time, and would be absent for more than four days a month due to his impairments. (R. at 653–54.)

The ALJ found Dr. Duerden's opinion "partially persuasive," and indeed the ALJ found the opinions of none of the medical care providers or state agency reviewing doctors in the record entirely persuasive. (R. at 23, 25.) The ALJ found certain of Dr. Duerden's findings supported by his observations that Plaintiff "struggled with tasks, had problems with depression and struggled with concentration," and the ALJ assigned moderate limitations to a number of "paragraph B" areas,[1] including the ability to interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. (R. at 25.) Importantly, the ALJ found Dr. Duerden's opinions that Plaintiff would be off task more than 25 percent of the time and absent more than four days a month to be inconsistent with his treatment notes. (R. at 25.) While the ALJ acknowledged that Dr. Duerden noted Plaintiff's "anxiety, depression and PTSD," the ALJ observed that, in his treatment sessions, Plaintiff often had "grossly intact memory, had average/appropriate fund of knowledge, had a normal mood, had grossly intact attention/concentration and was alert and/or oriented"; that he "reported improvement in his depression"; and that he "reported things were 'going well' in multiple examinations." (R. at 22, 25.) Elsewhere in her decision, the ALJ stated that the mental impairments noted by Dr. Duerden "have similar symptomology and are subjective in nature," and the ALJ considered only Plaintiff's

---

[1] Part (or Paragraph) B of the Social Security Administrations rules with regard to mental impairment lists evaluative criteria for a claimant's mental condition, and limitation in these areas are rated as none, mild, moderate, marked, or extreme.

"psychological symptoms and their effect on his functioning, cumulatively, regardless of the diagnoses." (R. at 22.)

The ALJ thus concluded that Plaintiff's mental impairments can be accommodated by "limiting the changes in [Plaintiff's] work environment and work procedures, limiting his interactions with supervisors and co-workers, restricting his interaction with the public and allowing him less than 10% off-task time." (R. at 25.) In doing so, the ALJ properly considered the supportability and consistency factors and relied on substantial evidence in the record. While Plaintiff is correct that he underwent psychiatric hospitalization in October 2019 and that certain treatment notes recorded that he was "distressed" and "tearful," many other treatment notes stated he had a "normal mood," was improving, and felt things were "going well." (R. at 20–22.)

Even in an instance such as this—where some of Dr. Duerden's treatment notes indicate more mental impairment than others and some medical care providers opined Plaintiff was more limited than others—the ALJ must simply give sufficient reasons supported by substantial evidence for resolving the discrepancies and reaching her conclusions. Because the ALJ met that standard here, the Court will not disturb the ALJ's conclusions. *See Batson v. Comm'r of Soc. Sec.*, 359 F.3d 1190, 1196 (9th Cir. 2004) ("When evidence reasonably supports either confirming or reversing the ALJ's decision, we may not substitute our judgment for that of the ALJ." (internal citation omitted)). Moreover, the RFC formulated by the ALJ accounted for Dr. Duerden's findings by limiting Plaintiff to no interaction with the public and only occasional changes in the work environment and procedures.

The same applies to the ALJ's evaluation of the opinion of Lori Fantry, M.D., an infectious disease specialist Plaintiff saw to treat HIV. Dr. Fantry stated that Plaintiff would have limitations including being off task greater than 25 percent of the time, maintaining attention and concentration for less than one hour at a time, and standing or walking for less than one hour in an eight-hour day. (R. at 640–41.) Plaintiff argues that the ALJ "failed to perform even a surface level analysis of Dr. Fantry's opinion" (Pl. Br. at 11, 19–21), but

that is not the case. The ALJ found that while Dr. Fantry's opinion appeared to be supported by testing she performed, it was inconsistent with the medical evidence. (R. at 24.) Indeed, Plaintiff himself testified at the hearing that it would be fair to say he is not limited from working due to any physical limitations and "there's medically nothing physical that I could not work" other than his mental impairments, and in particular, fear and anxiety. (R. at 50–51.) The ALJ gave sufficient reasons supported by substantial evidence in the record to discount Dr. Fantry's opinion of Plaintiff's physical limitations.

In sum, the Court finds no material error in the ALJ's evaluation of the medical evidence.

### B.     Symptom Testimony

In his testimony before the ALJ (R. at 35–69), Plaintiff emphasized that the reasons he feels unable to work are fear and anxiety (R. at 41–42, 46) and that it causes him to lose concentration in completing tasks and generally to want to stay in his home. Plaintiff now argues that the ALJ failed to provide clear and convincing reasons for discounting Plaintiff's subjective testimony. (Pl. Br. at 21–25.)

While credibility is the province of the ALJ, an adverse credibility determination requires the ALJ to provide "specific, clear and convincing reasons for rejecting the claimant's testimony regarding the severity of the claimant's symptoms." *Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1102 (9th Cir. 2014) (citing *Smolen v. Chater,* 80 F.3d 1273, 1281 (9th Cir. 1996).)). For example, "[i]n evaluating the credibility of pain testimony after a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). But the ALJ may properly consider that the medical record lacks evidence to support certain symptom testimony. *Id.* at 681. The ALJ may also properly consider inconsistencies in the claimant's testimony, including inconsistencies between the claimant's testimony of daily activities and symptom testimony. *Id.*

The ALJ concluded that, while Plaintiff's medically determinable mental impairments—bipolar type I, anxiety, and PTSD—could be expected to cause the alleged symptoms, Plaintiff's statements about the "intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence." (R. at 22.) For example, the treatment notes showed that Plaintiff improved after the 2019 psychiatric hospitalization and no longer had suicidal or homicidal ideations. (R. at 22.) Likewise, for Plaintiff's symptom of headaches, grogginess, fatigue, and nausea induced by anxiety and the medications therefor, the treatment record showed that Plaintiff either did not report these symptoms or that they had improved. (R. at 23.) As noted *supra*, the ALJ also noted that, in many of Plaintiff's treatment sessions, he was calm with normal mood with "grossly intact concentration." (R. at 23.) Moreover, in terms of treatment, the ALJ noted that Plaintiff has not undergone any further in-patient hospitalization for his reported symptoms since October 2019. (R. at 23.)

The ALJ provided specific and clear reasons for discounting Plaintiff's testimony, and—like the ALJ's evaluation of the medical evidence—the reasons were sufficiently convincing for the Court not to disturb them. *See Batson*, 359 F.3d at 1196. In the absence of finding material error on the part of the ALJ, the Court will affirm the ALJ's decision.

**IT IS THEREFORE ORDERED** affirming the July 8, 2021 decision of the ALJ (R. at 14–27), as affirmed by the Appeals Council (R. at 1–3).

**IT IS FURTHER ORDERED** directing the Clerk of Court to enter judgment and close this case.

Dated this 15th day of May, 2024.

Honorable John J. Tuchi
United States District Judge